Filed 7/21/26  Hebeish v. Mohagen CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| WALLY HEBEISH et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>RANDY MOHAGEN,<br><br>    Defendant and Respondent. | B350194<br><br>(Los Angeles County<br> Super. Ct. No. 24LBCP00220) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Nicole M. Heeseman, Judge.  Affirmed.

Dawn McIntosh, City Attorney, and Gary J. Anderson, Assistant Deputy City Attorney, for Plaintiffs and Appellants.

James E. Trott for Defendant and Respondent.

## INTRODUCTION

Randy Mohagen was terminated from his employment as a peace officer based on two charges that arose out of a traffic accident on November 11, 2019: (1) failure to properly investigate a potential domestic violence incident while on duty; and (2) being untruthful with Internal Affairs investigators when he denied that one of the parties to the traffic accident mentioned or alleged to Mohagen any type of domestic violence.

Mohagen challenged his termination by filing a petition for writ of administrative mandamus[1] in the trial court. The trial court upheld the first charge but overturned the second charge. The trial court therefore denied Mohagen's petition in part and granted it in part, set aside the termination, and remanded the matter to the Long Beach Civil Service Commission (Commission) to reevaluate its penalty in light of the court's conclusions.

The Commission appeals, along with Long Beach Police Chief Wally Hebeish, Long Beach City Manager Thomas Modica, and the City of Long Beach (together, the City). The City contends the trial court should have denied the petition in its entirety.

Because substantial evidence supports the trial court's findings, we affirm.

## BACKGROUND

At the time of the November 11, 2019 incident, Mohagen had been a police officer with the Long Beach Police Department for approximately 22 to 23 years. On that date, at 11:38 a.m., a call for service came in. The caller mentioned tires screeching from a red Mustang and someone screaming. Shortly thereafter, an update from the same caller came in, regarding a male

---

[1]     See Code of Civil Procedure section 1094.5.

driving a red Ford Mustang, a female in a white car, and possible road rage. At 11:42 a.m., a different caller reported a fight involving a black male armed with a wrench.

Mohagen was dispatched to the first call. He arrived on the scene and saw a red Ford Mustang that had rear-ended a white car.

Mohagen first spoke with Ashley Avington, the driver of the white car. Avington said she had been arguing with Giovanni Young, the driver of the red Mustang and the father of her children, about her bank card and other items, which he had refused to give to her.[2] Avington told Mohagen, "I told him to give me my bank card. Give me my stuff. He refused to. We started arguing."

Mohagen then spoke with Young, who described a confrontation with Avington at his home about "her card or whatever." Young said that Avington "came fighting me and shit." Young said he then chased down Avington in his car, admittedly following too closely, and rear-ended her when she slowed to turn into a parking lot. Young said that, after the collision, he had asked Avington, why she had come over and "beat me up for nothing." Young told Mohagen, "[T]his is normal for us."

Mohagen's police report notes that Young was driving without a driver's license or proof of insurance and that he was at fault in the collision. It also notes that no one in either car was injured. Mohagen gave both drivers a "report receipt," after which both vehicles drove away from the scene.

Subsequently, Mohagen was questioned by Internal Affairs, and ultimately formal charges were brought, seeking his termination. The first

---

[2] The children, ages one and nine, were passengers in Avington's car at the time.

charge was that Mohagen, "while on duty, failed to properly investigate a potential Domestic Violence incident." The second charge was that Mohagen "was untruthful with Internal Affairs investigators when he denied that one of the parties [Giovanni Young] to a non-injury traffic accident … mentioned and/or alleged to him (Mohagen) any type of domestic violence."[3]

An administrative hearing was held. During the hearing, Mohagen was asked, "Even though [Young] had said three times that Ms. Avington fought him and beat him up for nothing and this was normal for us, you responded to the question, did anyone allege domestic violence or a fight, with the answer no, and it's your testimony that that was not untruthful?" Mohagen responded, "It was an argument. He used the word argument as well." Mohagen acknowledged that Young had used the word "fight" twice and said that "she beat me up for nothing."

Mohagen was also asked, "Do you understand that the word fight can also mean a violent confrontation or struggle?" He responded, "I understand the word fight has more than one meaning, and I understand the common understanding of what a fight means.... [I]t's very common to say, oh, I had a fight with my spouse last night, and you don't think, oh, was there domestic violence? .... I had a fight with the wife last night, you think you had an argument. You don't automatically assume you beat up your wife." Mohagen

---

[3] "Domestic violence" is defined under Department policy as "'abuse' committed against an adult or fully emancipated minor who is a spouse, former spouse, cohabitant, former cohabitant, or person with whom the suspect has had or is having a child or has had a dating or engagement relationship." "Abuse" is defined as "intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself/herself, or another."

acknowledged, however, that "fight can mean more than a verbal altercation."

Mohagen testified that Young had used "[a] lot of street slang." He was asked, "The term beat up, out on the street, what does that mean?" He responded, "To get over on somebody." Mohagen replied "No" when asked, "Does it have to be physical?" He agreed that the term "beat up" could, "like the word fight, mean mental." He was asked, "Abusing, harassing, whatever, but it's not necessarily physical even though the word beat up is being used; right?" He responded, "Right."

An Internal Affairs investigator testified that an officer who has probable cause to believe that domestic violence has occurred is required to determine who is the dominant aggressor and to make an arrest. He also testified that injuries are not a prerequisite to making such an arrest.

After the hearing, the Commission found that a preponderance of evidence supported both charges. The Commission sustained Mohagen's termination.

Mohagen then filed a petition for writ of administrative mandamus, seeking to set aside the decision of the Commission. As noted, the trial court granted the petition in part. In its written order, the trial court found that the weight of the evidence supported the Commission's sustaining of the first charge: "[Mohagen] may have interpreted Mr. Young's mentions of 'fighting' and 'beat me up' differently; however, given these phrases in combination with the calls, the failure of [Mohagen] to ask even a single question to ascertain whether the arguments were merely verbal or if Ms. Avington had laid hands on Mr. Young demonstrates a failure to follow proper Police Department policy and training."

The trial court then found that the weight of the evidence did not support the Commission's sustaining of the second charge: "The term 'fighting' can be used in many ways that does not indicate domestic violence; reading the [body worn camera] transcript, Ms. Avington was 'fighting' Mr. Young by telling Mr. Young to give him back her bank card." With regard to Young's statement of being "beaten up," the court found, "it is unclear that [Mohagen] was dishonest in his internal affairs interview. [Mohagen] believed that 'beaten up' meant verbal harassment and did not believe that the statement could be taken as an allegation of domestic violence."

## DISCUSSION

### A. *Standard of Review*

The parties agree that this case involves the independent judgment standard of review at the trial court level, as it involves a fundamental vested right in continued employment as a police officer. (See, e.g., *Wences v. City of Los Angeles* (2009) 177 Cal.App.4th 305, 314.) "In exercising its independent judgment, a trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.) On independent judgment review, the trial court is required to reweigh the evidence by examining the credibility of witnesses. (*Barber v. Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652, 658 (*Barber*).)

However, after independent judgment review by the trial court, an appellate court reviews whether the trial court's findings are supported by substantial evidence. (*Bedard v. City of Los Angeles* (2024) 106 Cal.App.5th

442, 454 (*Bedard*).) "Conflicts in the evidence must be resolved in favor of the judgment and where two or more inferences can be reasonably drawn from the facts, the reviewing court must accept the inferences deduced by the trial court.… Evidence is substantial if any reasonable trier of fact could have considered it reasonable, credible and of solid value." (*Ibid.*, internal quotation marks omitted.) "[W]e resolve all conflicts and indulge all reasonable inferences in favor of the prevailing party." (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 45.)

### B. *Substantial Evidence Supports the Trial Court's Decision on the Second Charge*

The City contends that substantial evidence does not support the trial court's decision to overturn the Commission's finding of dishonesty against Mohagen.

The City notes that the Commission did not find Mohagen's testimony credible as to how he understood the terms "fighting" and "beat … up." However, whether the Commission found Mohagen not to be credible is not relevant, as the trial court is required to reweigh witness credibility in exercising its independent judgment. (*Barber, supra,* 45 Cal.App.4th at p. 658.) On appeal, conflicts in the evidence must be resolved in favor of the judgment, and "where two or more inferences can be reasonably drawn from the facts, the reviewing court must accept the inferences deduced by the trial court." (*Bedard, supra,* 106 Cal.App.5th at p. 454, internal quotation marks omitted.) Mohagen testified that "on the street," the phrases "fighting" and "beating up" can mean a verbal altercation with no physical element, and that was how he understood those terms at the time of the incident. On substantial evidence review, we cannot say that the trial court was

7

unreasonable in finding credible Mohagen's testimony about his interpretation of the words "fighting" and "beating up."

The City contends the trial court's rulings were inconsistent because the court cited Young's statements about Avington "fighting" and "beat[ing]" him to support the first charge (failing to properly investigate potential domestic violence). We see no inconsistency in the trial court's upholding of the first charge while overturning the second. The trial court explained that, regardless of how Mohagen may have interpreted the phrases "fighting" and "beat me up," those phrases, "in combination with" the calls for service, required Mohagen to at least ask questions about whether the arguments were verbal or physical, based on "proper Police Department policy and training." In other words, Young's statements, in combination with the other facts, triggered Mohagen's duty to investigate further whether domestic violence had occurred, even if Mohagen had understood those words to mean nothing more than a verbal altercation.

In conclusion, substantial evidence supports the trial court's decision on the second charge.

DISPOSITION

The judgment is affirmed. Respondent Mohagen is entitled to recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COGLIATI, J.*

We concur:

MORI, Acting P. J.

TAMZARIAN, J.

---

*Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9